# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, on the relationship of private individuals, Edgar L. Muse, Linda L. Muse and Candi Muse; and EDGAR L. MUSE, LINDA L. MUSE AND CANDI MUSE, <br><br>Plaintiffs,<br>v.<br><br>BILL GIBBONS, in his individual capacity; DEBORAH MARTIN, in her individual capacity; JOYCE GRIMES SAFLEY, in her individual capacity; NINA HARRIS, in her individual capacity; and JAMES SKEANS, in his individual and in his official capacity for Campbell County Tennessee; CAMPBELL COUNTY, TENNESSEE<br><br>Defendants. | No. 3:16-cv-00718<br>CHIEF JUDGE CRENSHAW |

## MEMORANDUM OPINION

This litigation arose from the execution of search and administrative forfeiture warrants in Campbell County, Tennessee, that resulted in the confiscation of Plaintiffs' property. Plaintiffs sue Campbell County and state officials for injunctive and declaratory relief, claiming that Tennessee's administrative forfeiture procedures violate the Equal Protection Clause of the Fourteenth Amendment and the Due Processes Clauses of the Fifth and Fourteenth Amendments.

Now before the Court is the question of whether this Court is the appropriate venue to hear this case. Having considered the matter, the Court will transfer this action to the United States District Court for the Eastern District of Tennessee.

1

## I. Factual Background

Drawn from the Amended Complaint, the relevant factual allegations surrounding the venue issue are these:

During the last half of February 2015, James Skeans, a Campbell County Deputy Sheriff, obtained two search warrants from Campbell County Criminal Court Judge Shane Sexton. Based on those warrants, Skeans seized property valued at $400,000 from Plaintiffs. However, and contrary to the commands in Judge Sexton's warrants, Skeans appeared before Campbell County Circuit Court Judge John McAffee and presented him with an affidavit for the issuance of an administrative warrant to forfeit the property pursuant to Tenn. Code Ann. § 40-33-204. Judge McAffee issued the warrant but allegedly "did not strictly comply with the black letter law of [Tennessee] law," making everything that followed thereafter void, including the entry of administrative Orders that led to the forfeiture. (Doc. No. 37, Amended Complaint at ¶ 176).

The administrative Orders were entered by Nina Harris, a Legal Division Attorney, and Joyce Grimes Safley, an Administrative Judge, both of whom were appointed by Bill Gibbons, the Commissioner of the Tennessee Department of Safety and Homeland Security, and both of whom are alleged to have been acting as Gibbons' agent. After Plaintiffs filed a claim for the return of their property, Harris allegedly failed to establish a timely hearing date as required by Tenn. Code Ann. § 40-33-207(a), and improperly kept the case in "administrative abeyance." (Id. ¶ 185). Grimes Safley allegedly did not comply with Tennessee's forfeiture law because she "did not attend a docket for forfeiture hearings at the Legal Division in Knoxville, Tennessee, on January 6, 2015," (id. ¶220) yet falsely claimed Plaintiffs did not show, and she failed to enter an initial order of forfeiture within 90 days of that alleged hearing as required by law.

2

Gibbons is sued because he supervised Harris and Grimes, and his office has the responsibility to train Tennessee law enforcement officers regarding the initiation of administrative forfeiture proceedings. Joe B. Bartlett is sued because he is the Supervisor of the Forfeiture Division and allegedly fail to properly train and supervised those under his command.

## II. Legal Analysis

Campbell County is in the Eastern District of Tennessee. Because of that, and also because this Court had a case raising similar arguments regarding Tennessee's forfeiture provisions which arose out of Bradley County and was transferred to the Eastern District, Patterson *et al.* v. Gibbons, Case No. 3:15-cv-01493 (M.D. Tenn. 2015), the Court entered an Order (Doc. No. 49) requiring Plaintiff to show cause as to why this case, too, should not be transferred to that district. Plaintiffs have responded to that Order.[1]

### A.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This statute provides "broad discretion" in determining whether transfer is appropriate, Jackson v. L & F Martin Landscape, 421 F. App'x 482, 484 (6th Cir. 2009), and the exercise of this discretion "does not require a motion; a district court may transfer a case *sua sponte*," Carver v. Knox Cty., 887 F.2d 1287, 1291 (6th Cir. 1989).

"[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the

---

[1] Rather than respond to Plaintiffs' show cause filing, Defendants filed Motions to Dismiss the Amended Complaint (Doc. Nos. 56 & 60), which are presently in the briefing stages. Because this case will be transferred, those motions will be denied without prejudice to refiling.

3

private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 647 (6th Cir. 2006) (quoting Moses v. Bus. Card Exp., Inc., 929 F.2d 1131, 1137 (6th Cir.1991)). Notwithstanding Plaintiffs' arguments to the contrary, balancing those factors weigh in favor of transfer.

**B.**

Plaintiffs insist that transfer is unwarranted because the state Defendants reside in the Middle District,[2] and the actions of Gibbons' agents "in entering default judgments taking Plaintiffs' property occurred in Davidson County, Tennessee." (Doc. No. 51 at 2). They also argue that the constitutionality of the seizure of the property can be decided "by motions" and "there are no witnesses or parties that will be required to travel to the Middle District of Tennessee." (Id.). Plaintiffs further contend that all Defendants are represented by attorneys who have offices in the this district[3] and that "Plaintiffs brought this action in the Middle District as a centrally located venue for the convenience of potential class members who would be from the Western and Eastern Districts." (Id.).

Many of the same arguments were considered and rejected with dispatch by the Court on a Motion to Reconsider in Patterson. There, the Court ruled that (1) "the claims against Gibbons are in his supervisory role toward state officials" in the Eastern District and "the events surrounding his

---

[2] Bartlett, who was added as a Defendant in the Amended Complaint, is alleged to reside in Shelby County, which is in the Western District.

[3] Actually, Skean and Campbell County are represented by Rhonda L. Bradshaw whose office is in Knoxville, Tennessee where Plaintiffs' counsel is also located.

4

supervision" occurred in that district: (2) "the convenience or availability of attorneys is not a factor for the Court to consider when deciding jurisdiction:"; and (3) "there is no indication as to why Nashville is more convenient for potential class members than Chattanooga, or who the potential class members would be." (Case No. 3:15-cv-01493, Doc. No. 54 at 2).

Those observations apply equally to this case. Moreover, Plaintiffs' position regarding transfer neglects to consider that they are apparently residents of the Eastern District where Skeans, as agent for both Gibbons and Campbell County, executed the warrants and seized property (including vehicles), along with money from their "children's piggy banks without a warrant." (Doc. No. 37, Amended Complaint ¶¶ 1, 96, 92, 161, 162). A plaintiff's choice of venue is entitled to deference "based on the premise . . . that the decision to bring suit in one's home forum is a matter of convenience," Hefferan v. Ethicon Endo-Surgery Inc., 828 F.3d 488, 493 (6th Cir. 2016), but "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference," In re Link A Media Devices Corp., 662 F.3d 1221, 1223 (Fed. Cir. 2011).

Similarly, a plaintiff's choice of venue is entitled to less deference where the operative facts – "the site of the events from which the claim arises" – occurred elsewhere. Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013); see Internal Combustion Sols., LLC v. Yoshimura Research & Dev. of Am., Inc., 2014 WL 1391178, at *5 (D.N.J. Apr. 9, 2014) (stating that "plaintiff's choice of forum is entitled to less weight [where] the locus or operative events, or center of gravity" occurred in another district); Express Scripts, Inc. v. Jefferson Health Sys. Inc., 2014 WL 793773, at *3 (E.D. Mo. Feb. 27, 2014) ("The plaintiff's choice of forum is granted less deference, however, if it is not the plaintiff's residence, if the

defendant has little contact with the forum, . . . or the operative events took place in another forum."). Here, the operative events which served as the genesis for Plaintiffs' claims occurred in the Eastern District. It is there that (1) Skeans resides and works; (2) Skeans prepared the warrants; (3) Judges Sexton and McAffee issued warrants; (4) the warrants were executed; (5) the property was seized "for the financial benefit of Defendant Campbell County, Tennessee," (Doc. No. 37 Amended Complaint ¶ 96); and (6) Plaintiffs allegedly failed to show at the hearing set by Grimes Safley.

## C.

While it may be true that the majority of the state Defendants reside in this district, venue is also proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391((b)(2). This statutory provision coupled with the fact that Plaintiffs apparently reside in the Eastern District and the seizures took place in that district begs two question: (1) why was this case filed here?; and (2) is it in the interests of justice to retain rather than transfer jurisdiction, given that the interest of justice factor is "an important" factor that "may be decisive"? Beck v. Koppers, Inc., 2009 WL 230036, at *2 (N.D. Miss. Jan. 29, 2009) (citation omitted).

The answer to the first inquiry may be found in the representations made by Plaintiffs' counsel in both Patterson and this case. In Patterson, counsel wrote:

> Plaintiffs' attorney is currently in litigation in the Eastern District of Tennessee regarding his admission. That litigation is currently pending an appeal in the Sixth Circuit. Plaintiffs' attorney does not know whether or not he would be granted *pro hac vice* admission to the Eastern District if Plaintiffs' case were transferred. If Plaintiffs' attorney were to be denied *pro hac vice* admission to represent Plaintiff[s] after transfer, Plaintiff[s] would be denied counsel of [their] choice and be required to be represented by another attorney in the undersigned's office who is a member of the Eastern District or find new counsel.

6

(Case No. 3:15-cv-01493, Doc. No. 53-1 at 4). In this case, counsel related what allegedly occurred after the transfer in Patterson, writing:

> The undersigned who represented Patterson in the forfeiture proceedings and in the successful defense of his criminal charge applied for *pro hac vice* status however, District Judge Greer denied the undersigned *pro hac vice* admission thereby denying Patterson his attorney of choice.
>
> The circumstances and communications that led to the *sua sponte* transfer of venue in Patterson are unknown. The undersigned is cautious in speculating or suggesting matters for which there is no opportunity confirm. To be clear, relating the circumstances of the transfer in Patterson and the denial of *pro hoc vice* admission is not meant to be disrespect to this Court. The point is, that in the context of what occurred after the transfer in Patterson transfer, the transfer of [this case] will result in the [Plaintiffs] being without an attorney and greatly increase the cost of this litigation to all parties.

(Doc. No. 51 at 4-5).[4]

Although feigning to be cautious in his speculation, counsel's innuendos are disconcerting. The suggestion that there may have been some sort of communication or collusion between this Court and the Eastern District, and/or between the undersigned and Judge Greer prior to or after the transfer in Patterson deserves no further comment.

Counsel's representations are also troubling because they suggest that this forum was chosen specifically to avoid the case being presented to another judge. No doubt a certain amount of judge shopping necessarily occurs when choosing where to file suit, but rarely is it so blatantly expressed.

"Judge shopping is 'a practice that abuses the integrity of the judicial system by impairing public confidence in the impartiality of judges.'" Keilholtz v. Superior Fireplace Co., 2008 WL

---

[4] The Patterson case was ultimately dismissed pursuant to Younger v. Harris, 401 U.S. 37 (1971). On appeal, plaintiff argued "that the Eastern District is an inconvenient forum for this case—notwithstanding that most of the parties and witnesses are there—and that the court therefore should not have transferred the case." Patterson v. Gibbons, Slip Op. No. 17-5187 (6th Cir. Oct. 6, 2017). Because the argument was not raised below, however, the Sixth Circuit found it unnecessary to "dwell on that argument's geographic flaws[.]" Id. at 2.

5411497, at *2 (N.D. Cal. Dec. 29, 2008) (citation omitted); see, Vaqueria Tes Monjitas, Inc. v. Rivera Cubano, 230 F.R.D. 278, 279 (D.P.R. 2005) (collecting cases for the proposition that courts have "repeatedly recognized the troubling practice of judge-shopping"); Landau v. Virdian Energy PA, LLC, 2017 WL 3581323, at *3 (E.D. Pa. April 3, 2017) (observing that "[t]he practice of judge-shopping raises serious questions of professional ethics and undermines trust in the court's impartiality," and stating that "some consequence should follow" for those who engage in the practice). "In the context of interdistrict litigation, judge shopping has been described as the situation existing where plaintiffs 'see a storm brewing in the first court [and] try to weigh anchor and set sail for the hopefully more favorable waters of another district.'" Murray v. Sevier, 1992 WL 75212, at *1 (D. Kan. Mar. 13, 1992) (quoting Telesco v. Telesco Fuel & Masons' Material, Inc., 765 F.2d 356, 360 n. 4 (2d Cir.1985)).

Even though this case was filed shortly after Patterson and before a ruling by Judge Greer on counsel's *pro hac vice* request, the outcome of such a request was likely foreordained, raising the specter that this case was filed here only because counsel had run into difficulties practicing in the Eastern District. Certainly the case was not filed here as a magnanimous gesture to allow the state Defendants to defend the matter in the district where the primary state offices are located.[5]

Plaintiffs claim that transferring this case would deprive them of their right to chosen counsel because he cannot practice in the Eastern District. However, "[t]he word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." In re Volkswagen AG, 371 F.3d 201, 206 (5th Cir.

---

[5] Plaintiffs note that "no party requested a change of venue," (Doc. No. 51 at 5), but it is hardly surprising that the state Defendants would not move to transfer.

2004); see United States v. Pomerantz, 2017 WL 2483213, at *3 (W.D. Wash. June 8, 2017) (rejecting counsel of choice argument because the relevant contacts under Section 1404(a) "are the contacts between the parties, the witnesses, and the potential fora, not the parties' representatives"); Berry v. Deutsche Bank Tr. Co. Americas, 2007 WL 2363366, at *8 (D. Haw. Aug. 13, 2007) (giving no weight to plaintiff's argument that he would likely not be able to find another attorney to represent him in foreign district because ""courts have not considered the location of the parties' counsel as a factor for transfer"). Thus, Plaintiffs are incorrect in asserting that a "material criteria regarding transfer to the Eastern District is whether transfer will deny [them] their attorney of choice." (Doc. No. 51 at 5).

**D.**

The Supreme Court has observed that "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case," Van Dusen v. Barrack, 376 U.S. 612, 616 (1964), and "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness," Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Of equal, if not greater importance, however, is systemic integrity, which "must also necessarily take account of a party's attempt to game the federal courts through forum manipulation." Samsung Elecs. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 721 (E.D. Va. 2005); see Info. Prot. & Authentication of W. Virginia, LLC v. McAfee, Inc., 2009 WL 3672861, at *3 (N.D.W. Va. Oct. 30, 2009) ("observing that "the interests of justice require courts to guard against manipulation of the legal process for mere strategic reasons").

Given the particular and peculiar circumstances of this case, the Court finds that the interest

9

of justice would not be served by retaining jurisdiction. It would be in the interest of justice, however, to transfer the case to the district in which Plaintiffs apparently live, venue over all Defendants is proper, and the operative events that led to the basis for Plaintiffs' claims originated.

### III. Conclusion

On the basis of the foregoing, the Court will transfer this case to the Eastern District. The Motions to Dismiss will be denied without prejudice, and the related motions will be denied as moot.

An appropriate Order will enter.

                                                    
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE